UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
TOWN OF NEWBURGH, NEW YORK,

                                  Plaintiff,

     - against -

NEWBURGH EOM LLC, NEWBURGH
EOM LLC d/b/a CROSSROADS HOTEL,
CROSSROADS HOTEL, RATAN
NEWBURGH, LLC, and RATAN
NEWBURGH, LLC d/b/a RAMADA INN,

                               Defendants.
------------------------------------------------------------x

**OPINION & ORDER**

No. 24-CV-5059 (CS)

<u>Appearances</u>:

Jeffrey D. Sherwin
Nicholas J. Berwick
MacVean, Lewis, Sherwin & McDermott, P.C.
Middletown, New York
*Counsel for Plaintiff*

Todd E. Soloway
Todd B. Marcus
Jacob B. Orgel
Pryor Cashman LLP
New York, New York
*Counsel for Defendants*

<u>Seibel, J.</u>

      Before the Court is the motion to remand of Plaintiff Town of Newburgh, New York

("Plaintiff" or the "Town").  (ECF No. 16.)  For the following reasons, the motion is

GRANTED.

## I.    **BACKGROUND**

      For purposes of the motion, the Court accepts as true the facts set forth in the Notice of

Removal, (ECF No. 8 ("NOR")).  *See County of Orange v. Crossroads Hotel*, No. 23-CV-4213,

2024 WL 1739914, at *1 (S.D.N.Y. Apr. 23, 2024); *Town of Poughkeepsie v. S. Rd. Hosp. LLC*, No. 23-CV-4214, 2024 WL 1156083, at *2 (S.D.N.Y. Mar. 18, 2024). Because the validity of the removal petition here involves a jurisdictional inquiry, I may also draw additional facts where necessary from the parties' submissions, such as exhibits attached to the notice of removal or the motion papers. *See Romano v. Kazacos*, 609 F.3d 512, 520 (2d Cir. 2010); *Torres v. St. Vincent DePaul Residence*, No. 22-CV-7012, 2023 WL 2754305, at *1 n.1 (S.D.N.Y. Apr. 3, 2023); *Winters v. Alza Corp.*, 690 F. Supp. 2d 350, 353 n.3 (S.D.N.Y. 2010).

In response to an increased need to house asylum seekers – originating primarily from countries in Latin America – New York City implemented a program through which asylum seekers could "voluntarily pursue temporary public accommodations" in hotels across New York State. (*See* NOR ¶¶ 7-8.) Sometime in the spring of 2023, Defendant Ratan Newburg L.L.C. d/b/a Ramada by Wyndham Newburgh/West Point ("Ramada") agreed to provide hotel rooms to "a relatively small" number of asylum seekers through the New York City program, and a number of asylum seekers voluntarily sought accommodations at that hotel. (*Id.* ¶ 11.)

On May 8, 2023, Orange County Executive Steve Neuhaus issued an Executive Order ("EO") that prohibited providing public accommodations to "migrants and asylum seekers." (*Id.* ¶ 12.)[1] Ramada alleges that the EO signaled to municipalities within Orange County that they should "enforce[] local zoning codes" to further the "EO's discriminatory prohibition." (*Id.* ¶ 13.)[2] Moreover, Ramada alleges that Town Supervisor Gil Piaquadio worked with Neuhaus to

---

[1] Shortly thereafter, the Honorable Nelson S. Román preliminarily enjoined enforcement of the Orange County EO, finding it likely violated the Equal Protection Clause, 42 U.S.C. § 1981, Title II of the Civil Rights Act, and the Due Process Clause. *See Deide v. Day*, 676 F. Supp. 3d 196, 222-30 (S.D.N.Y. 2023).

[2] This allegation is based on the fact that the EO stated that because local zoning codes did not allow long-term occupancy of hotels, enforcement of those codes would result in asylum

develop the EO, (*id.* ¶ 14),[3] and that prior to Neuhaus's issuance of the EO, Neuhaus and

Piaquadio issued a joint statement raising "'questions about who these immigrants are'" and

"'concern[s]' as to whether 'they were properly vetted,'" (*id.* ¶ 15 (alteration in original)

(quoting ECF No. 8-2 at 3)).  The NOR also pleads that Neuhaus espoused racially

discriminatory rhetoric at several media appearances in connection with the EO, (*id.* ¶¶ 17-20),

and that Piaquadio "[e]cho[ed] County Executive Neuhaus' rhetoric" when Piaquadio issued a

statement that raised "concerns with regard to the absence of background checks on these 60

men" and asserted that "the safety of the Town of Newburgh residents is most important," (*id.*

¶ 21).

On the same day that Neuhaus issued the Orange County EO, the Town's Board

convened an emergency meeting and passed a resolution that authorized special counsel to

commence litigation, pursuant to the Town's zoning laws, against Ramada and other hotels that

offered accommodations to asylum seekers, before any asylum seekers arrived in the Town.  (*Id.*

¶ 24.)  Additionally, in the following days, the Town's fire department and code

compliance/building department conducted "sham 'inspections' of [Ramada]," which Ramada

alleges were conducted to find "conditions the Town could exploit in a zoning enforcement

action" to either prevent it from, or punish it for, providing accommodations to asylum seekers.

---

seekers being rendered homeless at a time when all shelters in the County were full.  (*See* ECF
No. 8-1 at 2-3.)

[3] This allegation is based on Neuhaus's deposition testimony in other litigation to the
effect that Town Supervisor Piaquadio was "involved" in the EO, in that the two spoke and
Neuhaus believed the Town was planning to "do the same exact thing."  (ECF No. 8-3 at 32:8-
24.)  When then asked about Piaquadio's role in the issuance of the EO, Neuhaus stated that
Piaquadio "had no role," but had called Neuhaus, who told Piaquadio that he was issuing an
executive order.  (*Id.* at 32:25-33:4.)  There is no indication in the record that Piaquadio or the
Town issued a comparable order.

(*Id.* ¶ 25.)  As of the filing of the NOR, the Town had not indicated to Ramada that it identified any issues.  (*Id.*)  On May 15, 2023, approximately 70 asylum seekers arrived at Ramada.  (*Id.* ¶ 26.)

On May 12, 2023, the Town brought this action in New York State Supreme Court, Orange County, against Newburgh EOM LLC, Newburgh EOM LLC d/b/a Crossroads Hotel, and Crossroads Hotel (collectively, "Crossroads" and together with Ramada, the "Defendants"), which is the other hotel in the Town that arranged with New York City to accommodate asylum seekers.[4]  (*See id.* ¶ 27.)  On May 16, 2023, in the New York State Supreme Court, County of Orange, the Honorable Sandra Sciortino held oral argument on the Town's application for a temporary restraining order ("TRO"), (*see* ECF No. 16-4), and granted a TRO that, among other things, enjoined Defendants from (1) transporting additional migrants or asylum seekers to Orange County; (2) modifying, altering, or changing the use of the Defendants' properties – except to change the bed configurations in rooms currently occupied – "unless and until such time as appropriate permit applications are filed with the Town of Newburgh, appropriate inspections are conducted, and continued activity is approved by the Town of Newburgh and any other required governmental authority"; (3) operating as "a shelter for long-term housing of non-transient guests," except for the 186 persons already occupying the properties, "unless and until such use is approved by the Town of Newburgh and any other required governmental authority";

---

[4] Newburgh EOM LLC, Newburgh EOM LLC d/b/a/ Crossroads Hotel, and Crossroads Hotel are all the same entity.  (ECF No. 8-9 at 66.)  Citations to ECF No. 8-9 use the pagination provided by the Court's Electronic Case Filing ("ECF") system.

and (4) using the Defendants' properties referenced in the state court complaint "in violation of the Town Code of the Town of Newburgh New York," (*see* ECF No. 8-9 at 56-59).[5]

## II.    **PROCEDURAL HISTORY**

On May 21, 2023, Crossroads timely removed this action to federal Court, asserting federal question jurisdiction pursuant to the "arising under" doctrine of 28 U.S.C. § 1331, as incorporated into 28 U.S.C. § 1441.  (*See Town of Newburgh v. Newburgh EOM LLC*, No. 23-CV-4212 (S.D.N.Y.) ECF No. 4 ¶¶ 5-21.)  Crossroads subsequently filed an Amended Notice of Removal, (No. 23-CV-4212 ECF No. 20), asserting as an additional basis for removal that this matter is a civil rights case removable under 28 U.S.C. § 1443(1), (*see id.* ¶¶ 12-31).  On June 23, 2023, the Town filed a motion to remand, (No. 23-CV-4212 ECF No. 29), and on January 23, 2024, I granted that motion and remanded the case to state court, (No. 23-CV-4212 ECF No. 36).  On February 5, 2024, Crossroads appealed that decision to the Second Circuit, (No. 23-CV-4212 ECF No. 37), and that appeal remains pending.

On June 6, 2024, the Town filed an Amended Complaint in this action in state court, adding Ramada as a defendant.  (*See* ECF No. 8-10; NOR ¶ 33.)  In the Amended Complaint, the Town alleges that Ramada's certificate of occupancy is for its use as a motel and Crossroads'

_____

[5] Ramada was represented at the oral argument (by the same counsel who represented Crossroads) because although the Town had not sued Ramada, Orange County had, and Judge Sciortino held argument on both cases jointly.  (*See* ECF No. 16-4.)  The TRO indicated that it was on consent.  (ECF No. 8-9 at 54.)  On May 17, 2023, counsel for Crossroads and Ramada filed a letter requesting a correction to the TRO to reflect that his clients had consented only to those portions of the TRO that capped the number of asylum seekers who could stay at the hotels to the number then staying there and required identification of those individuals to the extent permitted by law.  (*See* EF003105-2023, NYSCEF Doc. No. 26.)  That day, Judge Sciortino entered an amended TRO reflecting that correction.  (*See* EF003105-2023, NYSCEF Doc. No. 27.)  The Court takes judicial notice of the docket entries filed in the state court from which Ramada removed this case.  *See Advanced Analytics, Inc. v. Citigroup Glob. Mkts., Inc.*, No. 04-CV-3531, 2022 WL 2529281, at *3 (S.D.N.Y. July 7, 2022).  Citations to "EF003105-2023, NYSCEF Doc. No." refer to the corresponding docket entries for that case.

certificate of occupancy is for its use as hotel, and therefore occupancy is limited to thirty days.

(ECF No. 8-10 ¶¶ 20-22, 36-37.)[6]  The Amended Complaint seeks injunctive relief and

declaratory judgments on the basis that the Defendants' use of their properties for long-term

housing of asylum seekers or any other persons as non-transient individuals violates the Town of

Newburgh Building Construction Code § 71-8[7] and the Town of Newburgh Municipal Code

---

[6] The Town of Newburgh Municipal Zoning Code § 185-3 defines a "hotel" as:

> One or more buildings offering transient lodging accommodations on a fee or hire basis to the general public, and which provide rooms or areas for group assembly and a central kitchen only and a central dining room within the building or in an accessory building. A hotel shall not constitute an individual's or family's primary residence and shall not be construed to be a multiple dwelling.

(Code of Town of Newburgh, NY § 185-3).  The same provision defines "motel" as:

> A building or group of buildings, whether detached or connected, offering transient lodging accommodations on a fee or hire basis to the general public including transient automobile travelers and provided with accessory off-street parking facilities. A motel shall not constitute an individual's or family's primary residence and shall not be construed to be a multiple dwelling. The term "motel" includes all similar fee- or hire-based uses offering transient lodging to the general public and terms, such as tourist courts, motor lodges, auto courts and roadside cabins, but shall not be construed to include mobile homes or campers.

(*Id.*).  The New York State Building Code defines "transient" as "occupancy of a dwelling unit or sleeping unit for not more than 30 days."  2020 Building Code of New York State § 202.

[7] Town of Newburgh Building Construction Code § 71-8 reads, in relevant part:

> A certificate of occupancy or certificate of compliance shall be required for any work which is the subject of a building permit and for all structures, buildings, or portions thereof, which are converted from one use or occupancy classification or subclassification to another.  Permission to use or occupy a building or structure, or portion thereof, for which a building permit was previously issued shall be granted only by issuance of a certificate of occupancy or certificate of compliance.

(Code of Town of Newburgh, NY § 71-8).

§ 185-50,[8] which the Amended Complaint alleges require compliance with the Defendants'

existing certificates of occupancy and preclude unauthorized changes of use. (*See* ECF No. 8-10

¶¶ 33-72; *id.* at 14.) On July 2, 2024, Ramada removed this action from state court, asserting

federal jurisdiction under 28 U.S.C. § 1443(1) for the denial of its rights under Title II of the

Civil Rights Act of 1964 ("Title II"), 42 U.S.C. §§ 2000a(a), 2000a-2(c). (ECF Nos. 1, 8; NOR

¶¶ 2-4, 36-50.) Crossroads consented to removal. (*See* ECF No. 8-11.) The instant motion

followed.

## III.    LEGAL STANDARDS

### A.    Mootness

"After a case has been removed from state court, a district court has a continuing

obligation to satisfy itself that federal jurisdiction over the matter before it is proper." *Gibson v.*

*N.Y. State Off. of Mental Health*, 372 F. Supp. 3d 23, 28 (N.D.N.Y. 2019).[9] "Even when neither

party has raised the issue of mootness . . . because it is a jurisdictional question, [courts] must

examine the issue *sua sponte* when it emerges from the record." *Doe v. McDonald*, 128 F.4th

---

[8] The Town of Newburgh Municipal Code § 185-50 states, in relevant part:

> A certificate of occupancy shall be deemed to authorize, and is required
> for, both initial and continued occupancy and use of a building or the land
> to which it applies. The following shall be unlawful until a certificate of
> occupancy shall have been applied for and issued by the Building and
> Code Enforcement Officer:
>
>> (1) Occupancy and use of a building hereafter erected, structurally
>> altered or moved or any change in the use of an existing building.
>>
>> (2) Occupancy, use or any change in the use of any land.
>>
>> (3) Any change in use of a nonconforming use.

(Code of Town of Newburgh, NY § 185-50).

[9] Unless otherwise indicated, case quotations omit all internal citations, quotation marks,
footnotes, and alterations.

379, 384 (2d Cir. 2025); *see In re TPG Troy, LLC*, 793 F.3d 228, 232 (2d Cir. 2015) ("Because it goes to the court's subject matter jurisdiction, mootness may be raised at any stage in the litigation."); *Gibson*, 372 F. Supp. 3d at 28 (court's obligation to ensure jurisdictional requirements are met exists "[e]ven where the parties are satisfied to present their dispute to the federal courts").

      "Because [the court's] jurisdiction is constitutionally limited to actual, ongoing cases or controversies, a party must at all stages have an actual injury likely to be redressed by a favorable judicial decision." *Exxon Mobil Corp. v. Healey*, 28 F.4th 383, 392 (2d Cir. 2022). The parties must have a "continued personal stake in the outcome" so that courts "resolve only real and substantial controversies admitting of specific relief rather than issue decisions advising what the law would be upon a hypothetical state of facts." *Id.*; *see McDonald*, 128 F.4th at 385 ("A case is moot when the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome."). "A live controversy remains as long as a court can fashion *some* form of meaningful relief to award the complaining party, and even the availability of a *possible* remedy is sufficient to prevent a case from being moot." *Exxon Mobil*, 28 F.4th at 392 (emphasis in original). "The hallmark of a moot case or controversy is that the relief sought can no longer be given or is no longer needed." *Martin-Trigona v. Shiff*, 702 F.2d 380, 386 (2d Cir. 1983); *see Does 1-2 v. Hochul*, No. 22-2858, 2024 WL 5182675, at *1 (2d Cir. Dec. 20, 2024) ("Typically, no live controversy remains where a party has obtained all the relief [it] could receive on the claim through further litigation."); *Massa Constr. Inc. v. Empire State Carpenters Fringe Benefits Funds*, No. 12-CV-6405, 2013 WL 4780957, at *5 (E.D.N.Y. Sept. 4, 2013) ("If events occur subsequent to the filing of a suit which deprive the court of the ability to give the plaintiff meaningful relief, then the case is moot and must be dismissed."). "No matter how

vehemently the parties continue to dispute the lawfulness of the conduct that precipitated the lawsuit, the case is moot if the dispute is no longer embedded in any actual controversy about the plaintiff['s] particular legal rights." *Stafford v. Int'l Bus. Machs. Corp.*, 78 F.4th 62, 67 (2d Cir. 2023), *cert denied*, 144 S. Ct. 1011 (2024).

**B.    Removal Under 28 U.S.C. § 1443(1)**

Section 1443(1) permits removal from state court of criminal or civil actions against "any person who is denied or cannot enforce in the courts of such State a right under any law providing for the equal civil rights of citizens of the United States, or of all persons within the jurisdiction thereof[.]" 28 U.S.C. § 1443(1); *see Sea Gate Ass'n v. Krichevsky*, No. 18-CV-3408, 2019 WL 8587287, at *7 (E.D.N.Y. June 21, 2019).

Removal under this statute must satisfy a two-part test: "'First, it must appear that the right allegedly denied the removal petitioner [in state court] arises under a federal law providing for specific civil rights stated in terms of racial equality.'" *New York v. Best*, No. 23-CV-26, 2023 WL 198736, at *1 (E.D.N.Y. Jan. 17, 2023) (alteration in original) (quoting *Johnson v. Mississippi*, 421 U.S. 213, 219 (1975)); *see Suffolk Cnty. Dep't of Soc. Servs. v. Clarke*, 807 F. App'x 133, 135 (2d Cir. 2020) (summary order) ("[T]he Supreme Court has held that [§ 1443] applies only to removals based on claims of racial discrimination."); *Martin v. Town of Tonawanda Police Dep't*, No. 23-CV-419, 2023 WL 8539440, at *5 n.5 (W.D.N.Y. Dec. 11, 2023) (section 1443 "relates to circumstances involving the denial of equal rights in terms of racial equality").

"Second, it must appear on the face of the notice that the removal petitioner is denied or cannot enforce the specified federal rights in the courts of (the) [*sic*] State." *Best*, 2023 WL 198736, at *1. "[S]ection 1443(1) 'normally requires that the denial be manifest in a formal

expression of state law,'" *Crown Asset Mgmt., LLC v. Cunningham*, No. 22-938, 2022 WL 17660543, at *1 (2d Cir. Dec. 14, 2022) (summary order) (quoting *Johnson*, 421 U.S. at 219), "such as a state legislative or constitutional provision, rather than a denial first made manifest in the trial of the case," *Best*, 2023 WL 198736, at *1. Absent a formal expression of state law, removal is justified in the unusual case in which "an equivalent basis could be shown for an equally firm prediction that the defendant would be denied or cannot enforce the specified federal rights in the state court." *Johnson*, 421 U.S. at 219; *see Crown Asset Mgmt.*, 2022 WL 17660543, at *1 (to the same effect). The Supreme Court has described removal under § 1443(1) as narrow, *see Georgia v. Rachel*, 384 U.S. 780, 804 (1966), and the statute applies only in "rare situations where it can be clearly predicted by reason of the operation of a pervasive and explicit state or federal law that those rights will inevitably be denied by the very act of bringing the defendant to trial in the state court," *Johnson*, 421 U.S. at 220; *see Town of Poughkeepsie*, 2024 WL 1156083, at *4 (to the same effect); *Town of Newburgh v. Newburgh EOM LLC*, 712 F. Supp. 3d 473, 479 (S.D.N.Y. 2024) (to the same effect).

"Conclusory references to civil rights in a removal petition are woefully inadequate to support removal on the basis of section 1443." *Grohs v. Grohs*, No. 17-CV-1605, 2017 WL 4678182, at *3 (D. Conn. Oct. 17, 2017), *adhered to on reconsideration*, 2017 WL 5171845 (D. Conn. Nov. 8, 2017); *see Murray v. Hy Cite Corp./Royal Prestige*, 150 F. Supp. 2d 527, 530 (E.D.N.Y. 2001) ("[T]he removal petition must contain sufficient facts to show that there was such a denial by the state court and a citation or reference to a state law that deprived the petitioner of equal protection.").

Generally speaking, removal jurisdiction must be "strictly construed," *Syngenta Crop Prot., Inc. v. Henson*, 537 U.S. 28, 32 (2002), and any doubts should be resolved against

removability "out of respect for the limited jurisdiction of the federal courts and the rights of the states," *In re Methyl Tertiary Butyl Ether ("MTBE") Prods. Liab. Litig.*, 488 F.3d 112, 124 (2d Cir. 2007); *see Crossroads Hotel*, 2024 WL 1739914, at *2. The party seeking removal bears the burden of demonstrating that removal is proper. *See McCulloch Orthopaedic Surgical Servs., PLLC v. Aetna Inc.*, 857 F.3d 141, 145 (2d Cir. 2017) ("The defendant, as the party seeking removal and asserting federal jurisdiction, bears the burden of demonstrating that the district court has original jurisdiction."); *Montefiore Med. Ctr. v. Teamsters Loc. 272*, 642 F.3d 321, 327 (2d Cir. 2011) ("A party seeking removal bears the burden of showing that federal jurisdiction is proper."); *Town of Poughkeepsie*, 2024 WL 1156083, at *2 ("Unless that burden is met, the case must be remanded back to state court.").

## IV. DISCUSSION

### A. Mootness

As part of the Court's continuing obligation to satisfy itself that jurisdiction is proper, *see McDonald*, 128 F.4th at 384; *Gibson*, 372 F. Supp. 3d at 28, the Court inquired if the case was moot. (*See* ECF No. 22.) The parties responded that despite the fact that the asylum seekers have vacated the hotels, the parties did not consider the case to be moot. (*Id.*) The Court subsequently ordered the parties to provide a more detailed explanation, (*id.*), and on March 3, 2025, the parties submitted a joint letter response, (*see* ECF No. 23), in which they contend that this case continues to present a live controversy because (1) the Town's Amended Complaint requests a permanent injunction and (2) the NOR "articulate[s] a right to relief" for Ramada. (*See id.* at 1.) With respect to the first argument, the parties note that the Town seeks an order that would enjoin Defendants from participating in the New York City program in a manner that violates the Town's laws and from "continuing to provide non-compliant long term housing."

(*Id.* at 1-2.)  While the parties represent that there are no longer any asylum seekers at Defendants' hotels, (*see* ECF No. 22), Ramada contends that, absent the state court TRO, it would have provided accommodations to additional asylum seekers, asserting that an estimated 45,000 asylum seekers remain in New York City's care in an "evolving situation."  (ECF No. 23 at 2.)  With respect to the second argument, Ramada contends that the NOR itself presents a live controversy because it is a pleading in which Ramada removed the case to assert and vindicate its rights under Title II and reserved its rights to bring counterclaims, including for attorneys' fees.  (*See id.* at 2-3.)  Although its Answer contains no counterclaims, (*see* ECF No. 9), Ramada also argues that several of the affirmative defenses in its Answer seek to vindicate additional rights, (*see* ECF No. 23 at 2-3).

As to the first argument, the parties point only to the Amended Complaint's request to permanently restrain Defendants from "continued violations of Town Codes," including engaging in "activities associated with non-compliant housing overflow from the City of New York."  (*See* ECF No. 23 at 1-2 (citing ECF No. 8-10 ¶¶ 52-53); ECF No. 8-10 ¶ 72; *id.* at 14.) [10] Mootness is most clear in cases "where the only relief requested is an injunction."  *Am. C.L. Union of Mass. v. U.S. Conf. of Cath. Bishops*, 705 F.3d 44, 53 (1st Cir. 2013).  "A claim for

---

[10] The Town's Amended Complaint also seeks declaratory and preliminary injunctive relief in connection with the purportedly non-compliant housing provided to the asylum seekers. (*See* ECF No. 8-10 ¶¶ 33-49; *id.* at 14.)  But that relief, as the parties likely recognize, is clearly moot given that – at least as far as the parties represent – no asylum seekers remain at Ramada or Crossroads.  *See Does 1-2*, 2024 WL 5182675, at *2 ("A request for a declaratory judgment as to a past violation cannot itself establish a case or controversy to avoid mootness."); *Exxon Mobil*, 28 F.4th at 393 (courts "cannot enjoin what no longer exists"); *Moore v. Consol. Edison Co. of N.Y.*, 409 F.3d 506, 510 (2d Cir. 2005) ("The occurrence of the action sought to be enjoined normally moots the request for preliminary injunctive relief because this Court has no effective relief to offer once the action has occurred."); *Prins v. Coughlin*, 76 F.3d 504, 506 (2d Cir. 1996) ("A case is deemed moot where the problem sought to be remedied has ceased, and where there is no reasonable expectation that the wrong will be repeated.").

injunctive relief is moot if the court cannot grant any effectual relief by ordering the injunction because the parties no longer have a legally cognizable stake in the outcome." *See Calvary Chapel of Bangor v. Mills*, 542 F. Supp. 3d 24, 34 (D. Me. 2021), *aff'd*, 52 F.4th 40 (1st Cir. 2022).  As characterized by both the parties and the Amended Complaint, the Town seeks a permanent injunction enjoining Defendants from "continuing to provide non-compliant long term housing" in violation of the Town's codes, laws, and regulations.  (*See* ECF No. 23 at 1-2; ECF No. 8-10 ¶ 54; *id.* at 14.)  This requested relief "amounts to little more than an 'obey the law' injunction." *Rowe v. N.Y. State Div. of the Budget*, No. 11-CV-1150, 2012 WL 4092856, at *7 (N.D.N.Y. Sept. 17, 2012).  "'Obey the law' injunctions are vague, do not require the defendants to do anything more than that already imposed by law, subject the defendants to contempt rather than statutorily prescribed sanctions, and are not readily capable of enforcement." *Id.*  As a result, an "obey the law" injunction is disfavored and "would not be warranted here." *Id.*; *see Burns v. Rovella*, No. 19-CV-553, 2020 WL 12863774, at *12 (D. Conn. Feb. 21, 2020) ("An injunction must be more specific than a simple command that the defendant obey the law."); *Lapierre v. Lavalley*, No. 15-CV-1499, 2016 WL 4442799, at *3 (N.D.N.Y. Aug. 23, 2016) (Second Circuit requires injunction to be more specific than command to "obey the law").  Because the Town "simply requests that the court command the defendant to obey the law," it is "insufficient to seek injunctive relief."  *Burns*, 2020 WL 12863774, at *12; *see Leftridge v. Jud. Branch*, No. 22-CV-411, 2023 WL 4304792, at *7 (D. Conn. June 30, 2023); *Burrell v. DOCCS*, 655 F. Supp. 3d 112, 134 (N.D.N.Y. 2023).

Moreover, even if the Town obtained a permanent injunction, nothing would change, as the long-term occupants have vacated the hotels.  *See Perry v. Searls*, No. 23-CV-6521, 2024 WL 3163430, at *6 (W.D.N.Y. June 25, 2024) ("Here, nothing would change if the Court

entered an order in favor of P[laintiff].”); *Horswell v. Minnesota*, No. 24-CV-949, 2024 WL 1722340, at *1 (D. Minn. Mar. 21, 2024) (“Absolutely nothing about Mr. Horswell’s current circumstances would change if the Court granted the Petition on these claims.  This is the very definition of mootness.”), *report and recommendation adopted*, 2024 WL 1718753 (D. Minn. Apr. 22, 2024).

For these reasons, there is no prospective relief available to the Town even if it were to succeed on its underlying state claims.  *See Leftridge*, 2023 WL 4304792, at *7; *Burns*, 2020 WL 12863774, at *12; *Rowe*, 2012 WL 4092856, at *7.  Its case is therefore moot.  *See Randall v. United Network for Organ Sharing*, 720 F. Supp. 3d 864, 875 (C.D. Cal. 2024) (“[Plaintiff] no longer has any interest in an injunction that would prevent [Defendants] from engaging in the alleged conduct.  Such an injunction would not impact [Plaintiff] in any way.  The intervening circumstance has deprived [Plaintiff] of any standing he once had to seek such an injunction, and so his request for an injunction is moot and may not proceed.”); *Calvary Chapel*, 542 F. Supp. 3d at 37 (“The relief that [Plaintiff seeks] . . . is already in place . . .”).

Moreover, nothing suggests that the underlying conduct falls under the mootness exception for “disputes capable of repetition, yet evading review.” *Does 1-2*, 2024 WL 5182675, at *3.  “This exception applies when (1) the challenged action is in its duration too short to be fully litigated prior to cessation or expiration, and (2) there is a reasonable expectation that the same complaining party will be subject to the same action again.”  *Id.*  Even assuming that the length of stay for the asylum seekers was too short for the issues to be fully litigated, the record does not present any reasonable expectation that the Town will be subject to the same action by Defendants.  While Defendants state that tens of thousands of asylum seekers remain in New York City’s care, they also concede that the “landscape remains an evolving situation.”  (*See*

ECF No. 23 at 2.)  Their claim that New York City could resume use of the hotels to provide

long-term accommodations to the asylum seekers is purely speculative.  Indeed, contrary to

Defendants' argument that the underlying controversy would persist even if the TRO were lifted,

(*see id.*), the existence of the TRO shows, if anything, that there is no live controversy.  As the

parties acknowledge, the TRO is still in effect, and by its terms the 186 asylum seekers who

resided at Ramada and Crossroads were entitled to remain there until a court ordered otherwise.

(*See* ECF No. 8-9 at 58 ("[T]hose 186 (110 at Crossroads and 76 at Ramada) individuals

currently occupying the subject premises may remain in occupancy until further Order of this

Court.").)  Yet those same asylum seekers have now left, despite the TRO permitting their stay

and no court order directing otherwise, thereby showing that the challenged conduct ceased for

reasons outside of Defendants' control.[11]  As Defendants have already ceased providing

accommodations to those 186 individuals that the TRO expressly permitted, there is no

reasonable indication that, if the TRO were voided, Defendants would have continued to

accommodate them.  *See McDonald*, 128 F.4th at 387 ("Repetition must be more than a mere

physical or theoretical possibility, but probable.").  Put another way, "there is nothing in the

record to suggest that this issue is likely to recur between the parties here."  *Does 1-2*, 2024 WL

5182675, at *3; *see Exxon Mobil*, 28 F.4th at 395 ("This facet of the mootness doctrine is

---

[11] For this reason, the exception to mootness for voluntary cessation, *see McDonald*, 128
F.4th at 385; *Does 1-2*, 2024 WL 5182675, at *2, also does not apply, *see Am. C.L. Union of
Mass.*, 705 F.3d at 55 ("The voluntary cessation doctrine does not apply when the voluntary
cessation of the challenged activity occurs because of reasons unrelated to the litigation.");
*Iosilevich v. City of N.Y.*, No. 21-CV-4717, 2022 WL 19272855, at *12 (E.D.N.Y. Aug. 10,
2022) (voluntary cessation did not apply where "no indication the . . . vaccine mandate for
patrons was allowed to expire as a result of this lawsuit" and "the mandate ended for reasons
wholly unrelated to litigation"); *cf. R.S. by & through C.S. v. N.Y.C. Dep't of Educ.*, No. 21-CV-
10596, 2023 WL 2368987, at *12 (S.D.N.Y. Mar. 6. 2023) ("[T]he voluntary cessation doctrine
applies where a defendant, prior to the lawsuit, engages in unlawful conduct toward the plaintiff,
then voluntarily stops that unlawful conduct once sued.").

applicable only in exceptional situations.").  Thus, the Court concludes that the Town's underlying action is moot.

As an alternative basis, the parties contend that the NOR presents a live controversy because it affirmatively asserts and seeks vindication of Ramada's Title II rights.  (*See* ECF No. 23 at 2-3.)  Even assuming for the sake of argument that the NOR can be considered as asserting Ramada's own claim for violation of Title II as a "case or controversy," the case is still moot.  "Congress deliberately provided no damages remedy in the Public Accommodations Act itself, and § 207(b) provides that the injunction remedy of § 206 was the exclusive means of enforcing the rights based on this title."  *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 150 n.5 (1970); *see United States v. Johnson*, 390 U.S. 563, 567 (1968) ("[A]s we read the Act, the exclusive-remedy provision of § 207(b) was inserted only to make clear that the substantive rights to public accommodation defined in § 201 and § 202 are to be enforced exclusively by injunction."); *Keo v. Lancaster Behav. Health Hosp.*, No. 24-CV-6639, 2025 WL 836589, at *4 (E.D. Pa. Mar. 17, 2025) ("Title II of the Civil Rights Act of 1964 allows only claims for injunctive relief, not those seeking damages."); *Macer v. Bertucci's Corp.*, No. 13-CV-2994, 2013 WL 6235607, at *7 (E.D.N.Y. Dec. 3, 2013) ("[E]ven if a person allegedly excluded from a restaurant because of race proves a violation of Title II, she would not be entitled to damages and could only obtain injunctive relief and reasonable attorneys' fees.").  As I have concluded that the Town's underlying action is moot, and would therefore be dismissed, there would be nothing to enjoin even if we were to assume that Ramada would otherwise succeed in defending against the Town's claims on Title II grounds.  *See Does 1-2*, 2024 WL 5182675, at *2 (courts "'cannot enjoin what no longer exists'") (quoting *Exxon Mobil*, 28 F.4th at 393).  To the extent that Ramada contends its request for attorneys' fees defeats mootness, that argument fares no better.

"[A] claim for attorneys' fees cannot create a case or controversy either." *Id.* at *2; *see Ivy Club v. Edwards*, 943 F.2d 270, 276 (3d Cir. 1991) ("[A]n interest in attorneys' fees does not save a matter from mootness."); *R.S. by & through C.S.*, 2023 WL 2368987, at *8 n.7 (attorneys' fees request does not save claims from mootness); *cf. Lackey v. Stinnie*, 145 S. Ct. 659, 671 (2025) (party that obtains preliminary relief in case mooted before final judgment not entitled to fees under 42 U.S.C. § 1988(b)).[12]

Accordingly, this case is moot. "When a case becomes moot, the federal courts lack subject matter jurisdiction over the action." *Fox v. Bd. of Trs. of State Univ. of N.Y.*, 42 F.3d 135, 140 (2d Cir. 1994). Under 28 U.S.C. § 1447(c), "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction [over the removed action], the case shall be remanded." *See Bilal v. Russell*, No. 24-CV-3335, 2025 WL 845112, at *6 (E.D.N.Y. Mar. 18, 2025) ("A district court must remand an action to state court if at any time before final judgment it appears that the district court lacks subject matter jurisdiction.") (collecting cases); *Singh v. Equifax Info. Servs., LLC.*, No. 25-CV-1317, 2025 WL 825470, at *3 (E.D.N.Y. Mar. 17, 2025) ("Plaintiff has no Article III standing and this Court lacks subject-matter jurisdiction. Pursuant to 28 U.S.C. § 1447(c), this case is therefore remanded to the Supreme Court of the State of New York, Queens County."). Accordingly, the case is remanded to New York Supreme Court, Orange County.

---

[12] Ramada appears to argue that it intends to pursue additional rights beyond its Title II rights – the only rights that Ramada identifies in its petition for removal, (NOR ¶¶ 2-3, 36-50) – and points to the NOR's reservation of Ramada's right to bring counterclaims as a basis for finding a live controversy, (*id.* ¶ 51). But Ramada's Answer, (ECF No. 9), filed after its NOR, does not assert any counterclaims. Thus, the Court finds this argument unpersuasive.

**B.**    **28 U.S.C. § 1443(1)**

I address the merits of the § 1443(1) removal in an excess of caution.  The Town argues that this case must be remanded because this Court's prior decision in *Town of Newburgh* is law of the case that prohibits a second removal.  (*See* ECF No. 16-2 ("Town's Mem.") at 2-3.)  It also contends that the Hotel has not satisfied the second prong of the test for removal under 28 U.S.C. § 1443(1).  (*See id.* at 4-12; ECF No. 19 at 2-9.)  In opposition, Ramada asserts that the NOR cannot be precluded as law of the case, and that it meets the requirements for removal of a civil rights case under § 1443(1).  (*See generally* ECF No. 17 ("Ramada's Opp.").)

**i.    Law of the Case Doctrine**

"Under the law of the case doctrine, a decision on an issue of law becomes binding precedent in subsequent stages of the same litigation."  *Jennings v. City of N.Y.*, No. 22-CV-1885, 2023 WL 8462739, at *3 (S.D.N.Y. Nov. 22, 2023), *report and recommendation adopted*, 2023 WL 8462740 (S.D.N.Y. Dec. 7, 2023); *see Bank of Am. v. Pastorelli-Cuseo*, No. 17-CV-1666, 2017 WL 4678184, at *2 (D. Conn. Oct. 17, 2017) ("[S]ection 1447(d) and the law of the case doctrine collectively bar a successive removal by the same party on the same grounds if nothing of significance has changed since the prior removal.").  "The law-of-the-case doctrine, however, should not bind Defendant to decisions made in this action before Defendant was properly served and made a party."  *Cobalt Multifamily Invs. I, LLC v. Arden*, 46 F. Supp. 3d 357, 360 (S.D.N.Y. 2014).

Here, Ramada was not a party to the case at the time of the prior removal by Crossroads.  Thus, it appears that the law of the case doctrine would not prohibit Ramada from removing the action.  *See Abbo-Bradley v. City of Niagara Falls*, 73 F.4th 143, 152 n.1 (2d Cir. 2023) (Sullivan, J., concurring) (new defendants named in amended pleading not barred from removing

after remand). In any event, "it is well-settled that this doctrine [of law of the case] is not absolute; rather, the Court should generally follow prior decisions in subsequent stages of the same case unless cogent and compelling reasons militate otherwise." *Absolute Resols. Invs., LLC v. Citibank, N.A.*, No. 22-CV-2079, 2024 WL 325110, at *10 (S.D.N.Y. Jan. 29, 2024). Ramada has not had a prior opportunity to remove, and accordingly, I do not find the NOR barred by the law of the case doctrine.

### ii.  <u>Removal Under § 1443(1)</u>

The Town does not dispute that Title II is a federal civil rights statute stated in terms of racial equality. It does dispute, however, that its actions are motivated by discrimination and that Ramada has been denied or cannot enforce its Title II rights in state court. (*See generally* Town's Mem. at 4-13.) Ramada does not identify any formal state enactment or other basis for "an equally firm prediction" that the state court would not enforce Title II, but contends that removal is nevertheless proper because the state action is "intended to punish [it] for the exercise of the Title II right to the full and equal enjoyment of public accommodations." (Ramada's Opp. at 1; *see id.* at 7-9, 16-21; NOR ¶¶ 37.) Put another way, Ramada argues that the mere fact of the Town's lawsuit and the state court proceedings constitute a violation of Title II's prohibition against punishing or attempting to punish it for exercising Title II rights. (*See* Ramada's Opp. at 16-21.) I disagree.

"Even assuming, arguendo, that the challenges brought by [the Town] in the underlying state court complaint are racially motivated (prong one), [Ramada] has not made a sufficient showing that [it] will be denied or cannot enforce [its] rights under Title II . . . in New York state Court." *Crossroads Hotel*, 2024 WL 1739914, at *3; *see Town of Poughkeepsie*, 2024 WL 1156083, at *4; *Town of Newburgh*, 712 F. Supp. 3d at 481-82. The mere existence of the state

proceedings was sufficient for removal in the narrow circumstances found in *Rachel*, which involved patrons charged with trespass for refusing to leave an apparently whites-only restaurant in 1960s Georgia.  384 U.S. at 783.  In that case, the defendants' conduct was "immunized from prosecution" because the application of Georgia's neutral state trespass law was clearly in direct conflict with defendants' "nonforcible attempts to gain admittance to or remain in establishments covered by [Title II of the Civil Rights Act of 1964]."  *Id.* at 805; *see Alabama v. Conley*, 245 F.3d 1292, 1298 (11th Cir. 2001) (*per curiam*) ("In *Rachel*, it was only because section 203(c) of the Civil Rights Act of 1964 expressly immunized the defendants from prosecution for trespass when they peacefully attempted to gain admittance and remain at the restaurant, that 'the mere pendency of the prosecutions enables the federal court to make the clear prediction that the defendants will be denied or cannot enforce in the courts of (the) State the right to be free of any attempt to punish them for protected activity.'") (quoting *Rachel*, 384 U.S. at 804-05).  Put another way,

> [t]he Civil Rights act of 1964 . . . specifically and uniquely conferred upon the defendants an absolute right to violate the explicit terms of the state criminal trespass law with the impunity under the conditions alleged in the *Rachel* removal petition, and any attempt by the State to make them answer in a court for this conceded violation would directly deny their federal right in the courts of the State.

*City of Greenwood v. Peacock*, 384 U.S. 808, 826 (1966); *see New York v. Davis*, 411 F.2d 750, 753 (2d Cir. 1969) (to the same effect); *Hous. Auth. of Newark v. Henry*, 334 F. Supp. 490, 499 (D.N.J. 1971) ("[T]he test in determining a § 1443(1) removal is whether the specific activity pursued by a petitioner was specifically authorized by Congress, in order to accomplish the particular civil right conferred by the 'equal civil rights' statute which a petitioner relies upon.").

The Court agrees that Ramada and the asylum seekers should receive "protection for the narrow and crucial right of full and equal enjoyment of places of public accommodation."

(Ramada's Opp. at 20.)  Indeed, Title II expressly provides this protection.  *See* 42 U.S.C. § 2000a(a) ("All persons shall be entitled to the full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations of any place of public accommodation . . . without discrimination or segregation on the ground of race, color, religion, or national origin.").  And if the NOR pleaded facts showing that the Town's state court lawsuit seeks to deprive the asylum seekers of full and equal access to public accommodations at the Defendants' hotels, the need to defend against that lawsuit might suffice to show the "clear prediction that the defendants will be denied or cannot enforce in the courts of the state" to be free from punishment under section 203(c).  *Rachel*, 384 U.S. at 805.

But that is not the case here.  The Town's lawsuit does not seek to deprive the asylum seekers of full and equal access to Ramada's public accommodations; rather, it seeks to have the asylum seekers enjoy the same access to Ramada as anyone else – access in compliance with the Town's codes and laws.  (*See* ECF No. 8-10; ECF No. 16-4 at 7:24-8:2 ([Town's counsel]:  "The Town of Newburgh is not preventing people from staying at that hotel, in fact, it's just the opposite.  They're fine with anybody staying in the hotel for transient purposes for 30 days . . . ."); *id.* at 8:7-13 ([Town's counsel]:  "[The Town is] perfectly fine with the hotel being used for its legal use, for what its [certificate of occupancy] says, for transient use up to 30 days. . . .  This is not a residential hotel, it's a transient hotel, so it's really inappropriate to use it for a long term shelter.").)[13]  As the exhibits attached to the NOR show, the New York City

---

[13] One sentence in the Town's requested relief might, at first blush, arguably support Ramada's argument that the Town seeks to deny it equal access.  (*See* ECF No. 8-10 at 14 ("Plaintiff respectfully requests the entry of an order and judgment against Defendants . . . (f) directing the defendants to return the Asylum Seekers to the care, custody, and control of the City of New York[.]").)  But considering that sentence in the context of the overall state court litigation, this is a merely a reference to who would provide social services and other care for the

program anticipated providing public accommodations to the asylum seekers for durations exceeding several months – in other words, *greater* access than the thirty days permitted by local law. (*See* ECF No. 8-7 at 2 ("Approximately 60 asylum seekers arrived today for a period of four months."); ECF No. 8-9 at 28 ("Chris Ellis . . . from Mayor Adams office called [Town Supervisor Piaquadio] and advised [him] that the City of New York . . . had implemented a 'plan' or 'program' whereby the City would provide for four (4) months of temporary sheltering to single adult men seeking asylum in the United State[s]."); *id.* at 32 ("New York City Mayor Eric Adams today announced a new program to provide up to four months of temporary sheltering in nearby New York counties, outside of New York City . . . .").)[14]

Ramada does not present any authority that Title II provides the asylum seekers a right to *greater* access to public accommodations that would immunize Ramada from violations of the Town's neutral zoning laws and building codes that limit occupancies of hotels and the length of stays for guests. *See Chestnut v. New York*, 370 F.2d 1, 6 (2d Cir. 1966) ("The precept given to us by the Supreme Court as a result of *Peacock* and *Rachel* is that the right to remove under

---

asylum seekers after they left the Defendants' properties. (*See id.* ¶ 25 (noting that asylum seekers would not be eligible for social services at the conclusion of New York's four-month program); ECF No. 16-4 at 7:7-8 ([Town's counsel]: "You know, social services are not available for them, they're not qualified."); *id.* at 18:7-12 ([Defendants' counsel]: "They're under the care of the City of New York. City of New York is paying for this. Paying for the whole suite of services. There is security on the property, there's social services on the property, there's healthcare being provided, food being provided, all from the City of New York."); *id.* at 24:5-14 ([New York City's counsel]: "I think it's important to note that we are not transferring people into the jurisdiction of the Orange County local social services districts. We are retaining care of them. We are operating through Social Services Law and attached to my information . . . it says in a last resort we can go outside the jurisdiction to find a location, but they remain in [New York City's] care and they remain our responsibility funding-wise. . . . [W]e're providing services in the location.").)

[14] Indeed, as of the filing of the Town's motion to remand, the Town represented that the asylum seekers had been housed at the Ramada hotel "for over fourteen (14) months." (ECF No. 16-1 ¶ 9.)

§ 1443(1) is not a broad or a recently extended one . . . but, indeed, is a right limited in scope."); *South Carolina v. Moore*, 447 F.2d 1067, 1070 (4th Cir. 1971) ("It is plain from *Peacock*, however, that the right of removal under § 1443(1) is limited to cases in which the charged conduct clearly enjoys federal protection."); *New York v. Simithis*, No. 88-CV-1618, 1988 WL 59965, at *4-5 (S.D.N.Y. June 9, 1988) (distinguishing conduct at issue in *Rachel*, which was "explicitly protected and immunized from prosecution by section 203(c)," with Nuisance Abatement Law permitting a city court to close down a premise showing repeated violations of penal law); *Frinks v. North Carolina*, 333 F. Supp. 169, 171 (E.D.N.C. 1971) (removal under § 1443(1), including when invoking section 201 of Title II, "is limited to cases in which the charged conduct *clearly* enjoys federal protection") (emphasis in original), *aff'd*, 468 F.2d 639 (4th Cir. 1972).

Put another way, nothing in Title II "specifically and uniquely confer[s] upon the defendants an absolute right to violate the explicit terms of the [Town codes] with . . . impunity." *Peacock*, 384 U.S. at 826. The Town's lawsuit challenging special accommodations – alleged to extend well beyond Ramada's certificate of occupancy and use variances under the Town's neutral building and municipal codes – thus does not itself amount to a denial of rights that justifies removal under *Rachel*. *See Davis*, 411 F.2d at 753 ("[I]n *Rachel* the conduct charged as a criminal offense, to wit, not leaving the restaurants on request, was alleged by the defendants to be the very activity in which the Civil Rights Act gave them a right to engage, namely, enjoyment of equal access to places of public accommodation."); *Noel v. McCain*, 538 F.2d 633, 636 (4th Cir. 1976) (affirming remand where pendency of state libel suits did not inherently conflict with federal civil rights laws, because those laws did not immunize defamation); *Crossroads Hotel*, 2024 WL 1739914, at *3 ("That Plaintiff commenced the state court

proceeding, alone, does not present a necessary conflict with federal law akin to the state prosecutions in *Rachel*."); *Town of Poughkeepsie*, 2024 WL 1156083, at *4 ("Defendants have failed to allege that this is one of those rare situations in which it can be 'clearly predicted' that Defendants' federal rights 'will inevitably be denied by the very act of bringing the defendant to trial in the state court.'") (quoting *Peacock*, 384 U.S. at 828); *cf. Frontier Park Co., LLC v. Contreras*, 35 F. Supp. 3d 264, 271 (E.D.N.Y. 2014) ("Respondents have not alleged facts sufficient to show that the lawsuit filed in state court – which seeks redress against the Respondents' alleged holding over beyond the expiration of their tenancies – is itself an act by which their civil rights were violated.").

Accordingly, the mere pendency of the state lawsuit does not deprive Ramada or the asylum seekers of full and equal enjoyment of their civil rights under Title II. That statute does not provide Ramada or the asylum seekers a federal right to greater enjoyment of public accommodations than the general public. *See Crossroads Hotel*, 2024 WL 1739914, at *3; *Town of Newburgh*, 712 F. Supp. 3d at 481. And there is no allegation that the Town codes were enacted with any discriminatory motive. The Town cannot be said to be punishing Ramada or the asylum seekers for pursuing full and equal enjoyment of protected Title II rights, and the NOR offers nothing else from which the Court can "make the clear prediction that [Ramada] will be denied or cannot enforce in the courts of the State the right to be free of any attempt to punish [it] for protected activity." *Rachel*, 384 U.S. at 805.

Finally, Ramada argues that it cannot enforce its Title II rights in state court because the statute vests exclusive jurisdiction in federal courts. (*See* Ramada's Opp. at 22-25; NOR ¶¶ 47-50.) Specifically, Ramada contends that 42 U.S.C. § 2000a-6's plain language, and the legislative intent, render it "sufficiently clear" that Ramada cannot assert its Title II rights in state

court. (*See* Ramada's Opp. at 23.) I disagree that Title II vests exclusive jurisdiction in the federal courts for the reasons I set forth in denying Crossroads' motion for a stay pending appeal. *See Town of Newburgh v. Newburgh EOM LLC*, No. 23-CV-4212, 2024 WL 1507585, at *6-7 (S.D.N.Y. Apr. 8, 2024) (statute's plain language, under the Supreme Court's analysis of similar language in *Yellow Freight Sys., Inc. v. Donnelly*, 494 U.S. 820 (1990), and *Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368 (2012), would not confer exclusive federal jurisdiction).[15]

Thus, Ramada simply provides no reason to believe that it would be unable "to present to a state court [its] claims or defenses arising out of a federal civil rights statute." *New Haven Firefighters Loc. 825 v. City of New Haven*, 120 F. Supp. 3d 178, 204 (D. Conn. 2015); *see Crossroads Hotel*, 2024 WL 1739914, at *3; *Town of Poughkeepsie*, 2024 WL 1156083, at *4; *Town of Newburgh*, 712 F. Supp. 3d at 483. "[T]he provisions of § 1443(1) do not operate to work a wholesale dislocation of the historic relationship between the state and the federal

---

[15] Ramada cites to legislative history indicating that Title II was intended to be enforceable in federal court, but only one indication by one Senator that that federal jurisdiction was to be exclusive. (*See* Ramada's Opp. at 24-25.) Courts resort to legislative history only where the statutory language is ambiguous. *Grajales v. Comm'r of Internal Revenue*, 47 F.4th 58, 62 (2d Cir. 2022). "The preeminent canon of statutory interpretation requires us to presume that the legislature says in a statute what it means and means in a statute what it says there." *BedRoc Ltd., LLC v. United States*, 541 U.S. 176, 183 (2004). And even if reference to legislative history were appropriate, a lone Senator's statement would not be persuasive, let alone conclusive. *See Bath Iron Works Corp. v. Dir., Off. of Workers' Comp. Programs, U.S. Dep't of Lab.*, 506 U.S. 153, 166 (1993); *Snell Island SNF LLC v. N.L.R.B.*, 568 F.3d 410, 422 (2d Cir. 2009), *cert. granted, judgment vacated*, 561 U.S. 1021 (2010), *adhered to*, 451 F. App'x 49 (2d Cir. 2011), *abrogated on other grounds by New Process Steel, L.P. v. N.L.R.B.*, 560 U.S. 674 (2010); *Marbley v. Bane*, 57 F.3d 224, 231 (2d Cir. 1995), *abrogated on other grounds by Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Hum. Res.*, 532 U.S. 598 (2001). Indeed, even if Ramada had shown that most legislators involved in the enactment of Title II "expected that such litigation would be processed exclusively in federal courts" – which it has not – that "anticipation [would] not overcome the presumption of concurrent jurisdiction that lies at the core of our federal system." *Yellow Freight*, 494 U.S. at 826.

courts," *Peacock*, 384 U.S. at 831, and "[a]nything other than a strict construction of this exception would offend principles of federalism and comity," *Henlopen Landing Homeowners Ass'n v. Vester*, No. 12-CV-308, 2013 WL 1704889, at *4 (D. Del. Apr. 19, 2013), *report and recommendation adopted*, 2013 WL 10974212 (D. Del. May 14, 2013). Indeed, "[t]he purpose of the second prong 'deny or cannot enforce' requirement 'is to give state courts the power and opportunity to correct alleged denials of a citizen's civil rights whenever possible, and thereby to avoid unnecessary federal interference with state judicial processes.'" *New Haven Firefighters*, 120 F. Supp. 3d at 202 (quoting 14C Wright, Miller & Cooper, *Federal Practice & Procedure* § 3727 (4th ed.)).

Accordingly, even if this action were not moot, the Court would have remanded the case because Ramada has not satisfied the requirements for removal under § 1443(1).

## V.    CONCLUSION

For the foregoing reasons, the case is remanded to New York Supreme Court, Orange County. The Clerk of Court is respectfully directed to terminate the pending motion, (ECF No. 16), and close the case.

**SO ORDERED.**

Dated: March 27, 2025
      White Plains, New York

_____
CATHY SEIBEL, U.S.D.J.